No. 15-11632-F

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ESTELLE SMITH, et al,

Plaintiffs/Appellees,

v.

RICHARD LEPAGE, JR. and CHARLES INGS,

Defendants/Appellants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

_____

**BRIEF OF APPELLANTS RICHARD LEPAGE, JR. AND CHARLES INGS**

_____

DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone: (404) 371-3011
Facsimile: (404) 371-3024

LAURA K. JOHNSON
Deputy County Attorney
Georgia Bar No. 392090

BRENDA A. RASPBERRY
Senior Assistant County Attorney
Georgia Bar No. 489573

Counsel for Defendants/Appellants
Richard LePage, Jr. and Charles Ings

46-2211

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-2(e), counsel for Defendants/Appellants Richard LePage, Jr. and Charles Ings hereby certify that the following is a complete list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, or corporations currently known to have an interest in the outcome of this case:

1. Clements, Teryl – Defendant

2. DeKalb County Board of Commissioners

3. Durant, Mary Katherine – Attorney for Plaintiffs/Appellees

4. Gamble, Vincent – Defendant

5. Ings, Charles – Defendant/Appellant

6. Johnson, Laura K. – Attorney for Defendants/Appellants

7. LePage, Richard – Defendant/Appellant

8. Lewis, Phillip – Defendant

9. Pearl, Alfonza – Attorney for Plaintiffs/Appellees

10. Raspberry, Brenda A. – Attorney for Defendants/Appellants

11. Reynolds, Paul – Defendant

12. Smith, Estelle – Plaintiff/Appellee

13. Smith, Kahrisma – Plaintiff/Appellee

14. Smith, Kasib – Plaintiff/Appellee

46-2211

15.  Totenberg, The Honorable Amy – Judge, U.S. District Court

16.  Whatley, Lynn H. – Attorney for Plaintiffs/Appellees

17.  Whatley and Associates, P.C.

46-2211

## <ins>STATEMENT REGARDING ORAL ARGUMENT</ins>

Defendants/Appellants Richard LePage and Charles Ings do not think that

oral argument will be necessary to decide this appeal.

46-2211

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS………………………..C-1-2

STATEMENT REGARDING ORAL ARUGUMENT……………………...i

TABLE OF CONTENTS…………………………………………………ii

TABLE OF AUTHORITIES…………………………………………...iv

STATEMENT OF JURISDICTION……………………………………ix

STATEMENT OF ISSUES……………………………………………...1

STATEMENT OF THE CASE……………………………………………1

I.    NATURE OF THE CASE……………………………….……..1

II.   COURSE OF PROCEEDINGS………………………….……..2

III.   DISPOSITION IN THE COURT BELOW…………………………4

IV.   STATEMENT OF FACTS………………………………………..5

V.    STANDARD OF REVIEW……………………………………….7

SUMMARY OF THE ARUGMENT……………………………………9


ARGUMENT AND CITATIONS OF AUTHORITY………………….....11


I.    THE DISTRICT COURT ERRED IN DENYING QUALIFIED
      IMMUNITY TO OFFICERS LEPAGE AND INGS ON PLAINTIFF'S
      FOURTH AMENDMENT EXCESSIVE FORCE CLAM……………..11

      A. Officers LePage and Ings Are Entitled to Qualified Immunity In Using
         Deadly Force Because They Had Probable Cause to Believe Dirk Smith
         Intended To Use Deadly Force Against Them and Their Fellow Officers
         (*Plaintiffs Have Not Shown a Fourth Amendment
         Violation*)…………………………………………………………..14

46-2211

B. Even if Plaintiffs Could Show a Constitutional Violation (Which they Cannot), LePage and Ings are Still Entitled to Qualified Immunity, Because The Alleged Constitutional Right Was Not Clearly Established When the Subject Incident Occurred…………………………….. ..24

II.    THE DISTRICT COURT ERRED IN DENYING OFFICIAL IMMUNITY TO DEFENDANTS LEPAGE AND INGS ON PLAINTIFF'S STATE LAW CLAIMS………………………………………………………………..26

CONCLUSION…………………………………………………………..29

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)…………………….30

CERTIFICATE OF SERVICE……………………………………………...31

46-2211

# <u>TABLE OF AUTHORITIES</u>

## <u>U.S. SUPREME COURT CASES</u>

<u>Anderson v. Liberty Lobby, Inc.</u>
  477 U.S., 242, 249-50, 106 S. Ct. 2505,2511 (1986)...............................................8

<u>Anderson v. Creighton</u>,
  483 U.S. 635, 640, 107 S. Ct. 3034 , 3039 (1987)................................................24

<u>Graham v. Connor</u>,
  490 U.S. 386, 395, 396-97 (1989)................................................................. 12, 13

<u>Harlow v. Fitzgerald</u>,
  457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)................................................11

<u>Mitchell v. Forsyth</u>,
  472 U.S. 511, 526, 530, 105 S. Ct. 2806, 2815 (1985)................................. ix, 11

<u>Pearson v. Callahan</u>,
  555 U.S. 223, 225, 231, 129 S. Ct. 808 , 815 (2009).................................. 11, 12,

<u>Scott v. Harris</u>,
  550, 550 U.S. 372, 377, 380, 383, 384, 127 S. Ct. 1769, 1776 (2007)..... 8, 13, 20

<u>Saucier v. Katz</u>,
   533 U.S. 194, 121 S. Ct. 2151 (2001)………………….………………………..12

<u>Tenneessee v. Garner</u>,
   471 U.S. 1, 105 S.Ct. 1964......…………………………………………………..14

<u>Warden, Md. Penitentiary v. Hayden</u>,
387 U.S. 294, 298-299, 87 S. Ct. 1642 (1967)…………………………….………..20

iv

## 11th CIRCUIT COURT OF APPEALS CASES

Acoff v. Abston,
  762 F.2d 1543, 1547 (11th Cir. 1985)...................................................................15

Bennett v. Hendrix,
  423 F.3d 1247, 1255 (11th Cir. 2005)................................................................ 24

Buckley v. Haddock,
  292 Fed. App'x. 791, 793-794 (11th Cir. 2008)……………………………………..14

Coffin v. Brandau,
642 F.3d 999, 1013 (11th Cir. 2011) ......................................................................24

Cottrell v. Caldwell,
  85 F.3d 1480, 1486 n.3 (11th Cir. 1996)................................................................7

Crosby v. Monroe County,
  394 F.3d 1328 (11th Cir. 2004).............................................................................13

Cummings v. DeKalb County,
  24 F.3d 1349, 1352 (11th Cir. 1994).................................................................... ix

D'Aguanno v. Gallagher,
  50 F.3d 877, 881 n.6 (11th Cir. 1995).................................................................24

Draper v. Reynolds,
  369 F.3d, 1270,1277-78 (11th Cir. 2004).............................................................13

Durruthy v. Pastor,
  351 F.3d 1080, 1087 (11th Cir. 2003)....................................................................9

Evans v. Hightower,
    117 F.3d 1318, 1320 (11th Cir. 1997).................................................................11

Hoyt v. Cooks,
    672 F.3d 977 (11th Cir. 2011)……………………………………………….7, 24

Kesinger ex rel. Estate of Kesinger v. Herrington,
    381 F.3d 1243, 1248 (11th Cir. 2004).................................................................13

Lee v. Ferraro,
    284 F.3d 1188, 1198 (11th Cir. 202)...................................................................13

McClish v. Nugent,
    483 F.3d 1231, 1237 (11th Cir. 2007)..................................................................24

Menuel v. City of Atlanta,
    25 F.3d 990 (11th Cir. 1994)...............................................................................17

Mercado v. City of Orlando,
    407 F.3d 1152 (11th Cir. 2005)...........................................................................17

Willingham v. Loughnan,
    321 F.3d 1299, 1303 (11th Cir. 2003)..................................................................25

Wood v. City of Lakeland, FL,
    203 F.3d 1288 (11th Cir. 2000)...........................................................................17

**GEORGIA CASES**

Adams v. Hazelwood,
    271 Ga. 414, 415, 520 S.E.2d 896, 898 (1999)...................................................27

Cameron v. Lang,
    274 Ga. 122, 123 (1) (2001) ............................................................................... 26

46-2211

Carter v. Glenn,
    249 Ga. App. 414, (2001) ......................................................................26

City & County of San Francisco, California v. Sheehan,
    135 S. Ct. 1765, 1768, 575, 1775 (2015) ..................................... 19, 20

Gilbert v. Richardson,
    264 Ga. 744, 753 (1994) ......................................................................26

McDay v. City of Atlanta,
    204 Ga. App. 621, 622 (1992) .............................................................26

Merrow v. Hawkins,
    266 Ga. 390, 392, 467 S.E.2d 336, 338 (1996) ...................................27

Murphy v. Bajjani,
    282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007) .......................................27

Selvy v. Morrison,
    292 Ga. App. 702, 704, 665 S.E.2d 401, 405 (2008) ..........................27

Valades v. Uslu,
    301 Ga. App. 885, 891 (2009) ............................................................ 27

Schmidt v. Adams
    211 Ga. App. 156, 157 (1993)……………………………………… ………….26

## RELEVANT STATUES AND OTHER CITATIONS

28 U.S.C.A. § 1291 ................................................................................. ix

28 U.S.C.A. §§ 1331, 1367(a) ................................................................ ix

42 U.S.C.A. § 1983 ........................................................................... ix, 12

46-2211

Ga. Code Ann. § 16-3-21(a) ...................................................................15

Ga. Const. Art. I, § 2, ¶ 9(d) ................................................................. 26

Fed. R. App. P. 25(a)(2)(B) ................................................................... 31

Fed. R. App. P. 26.1 ................................................................................1

Fed. R. App. P. 32(a)(7) ........................................................................ 30

Fed. R. App. P. 4 ................................................................................... ix

Fed. R. Civ. P. 12(b)(6) ........................................................................... 3

Fed. R. Civ. P. 56 ................................................................................. 22

Fed. R. Civ. P. 56(a) ............................................................................... 8

46-2211

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the original action pursuant to 28 U.S.C. §§ 1331 and 1367(a), because the original action asserted federal claims pursuant to 42 U.S.C. § 1983 and state law tort claims arising out of the same transaction or occurrence as the claims arising under 42 U.S.C. § 1983.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, because this is an appeal from an order denying summary judgment based on qualified and official immunity, entered on March 31, 2015 by the United States District Court for the Northern District of Georgia.  See, e.g., Cummings v. DeKalb County, 24 F.3d 1349, 1352 (11th Cir. 1994) (citing, *inter alia*, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).

Appellants Officer LePage and Officer Ings timely filed this appeal, in accordance with Fed. R. App. P. 4, by noticing this appeal on April 15, 2015, which was within thirty (30) days of the District Court's Order.  This brief is timely, pursuant to the Eleventh Circuit Court's Kinnard Mediation Center extending the deadline for filing this brief until July 27, 2015.

46-2211

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in denying qualified immunity to police officers Richard LePage, Jr. ("LePage" or "Officer LePage") and Charles A. Ings ("Ings" or "Officer Ings") on Plaintiff's Fourth Amendment excessive force claim based on their fatal shooting of Dirk Smith (Plaintiff Estelle Smith's husband), where the undisputed material facts show that they fired their guns in self-defense when Dirk Smith lunged at them with a knife posing a threat to their safety.

2.     Whether the District Court erred in denying official immunity to LePage and Ings on Plaintiffs' state law claims based on the officers fatally shooting Dirk Smith (Plaintiff Estelle Smith's husband), where there is no material evidence in the record showing the officers acted with actual malice.

## STATEMENT OF THE CASE

### I.     NATURE OF THE CASE

This is an appeal of the denial of summary judgment to police officers LePage and Ings in connection with their fatal shooting of Plaintiff Estelle Smith's husband, Dirk Smith.  These officers were forced to shoot Dirk Smith who lunged at them with a knife while they were attempting to take him into custody for assaulting Plaintiffs' babysitter, Ryan Bigham and Dirk had already pointed a knife at their fellow officers Paul Reynolds and Charles Ings who were investigating Mr.

- 1 -

Bigham's 911 call requesting police assistance.  Plaintiffs contend that LePage and Ings violated Dirk Smith's Fourth Amendment rights by using excessive force and Plaintiffs assert state law claims for wrongful death and violating the Georgia Constitution.

LePage and Ings moved for summary judgment based on qualified immunity as to Plaintiffs' federal constitutional claims and based on official immunity as to Plaintiffs' state law claims.  The District Court denied summary judgment to LePage and Ings on Plaintiffs' Fourth Amendment excessive force claim and state law claims.

## II.    COURSE OF PROCEEDINGS

Plaintiffs filed their Complaint in this action on March 5, 2012, asserting claims against several DeKalb County police officers, including LePage and Ings and DeKalb County, Georgia ("DeKalb County" or the "County").  [Doc.1]-1.[1] Plaintiffs' Complaint specifically alleged defendants LePage and Ings violated the Fourth Amendment and asserted state law claims for wrongful death and violating the Georgia constitution.  [1]-4-5, 21, 23-25.

All the named defendants timely filed answers to Plaintiff's complaint in the district court. [Docs. 4, 5, 6, 7, 8, 9, 10 & 11].  Then, on April 27, 2012, the defendants filed a motion to dismiss Plaintiffs' complaint for failure to state a

---

[1] Citations are to the district court docket number and page ([x]-y, with x being the docket number and y being the page).

claim pursuant to Fed. R. Civ. Proc. 12(b)(6). *See* [Doc.23].  The District Court dismissed Plaintiffs' claims against DeKalb County and former police chief William O'Brien, however it denied the motion as to the defendants/officers LePage, Ings, Clements, Reynolds, Lewis and Gamble.  At the actual close of discovery, on July 30, 2014, the remaining defendants moved for summary judgment against Plaintiffs' federal law claims and state law tort claims. *See* [Doc. 106].

With respect to Plaintiffs' federal claims, defendants/officers showed that qualified immunity barred Plaintiffs' claims under the Fourth Amendment for their warrantless entry into Plaintiffs' home and for their use of force against Dirk Smith (Plaintiff Estelle Smith's husband) who threatened them with a deadly weapon and resisted being taken into custody. [Doc.37]-6-22. They also showed that, in any event, qualified immunity applies, because it was not clearly established at the time of the incident that shooting an armed suspect who threatened their safety violates the Fourth Amendment. [Doc.37]-27-29.  With respect to Plaintiffs' state law claims, Defendants demonstrated that they are entitled to official immunity because they were performing a discretionary function when their fired their guns in self-defense against Dirk Smith, an armed suspect, and there is no evidence that they acted malice. [Doc.37]-29-32.

- 3 -

### III.    DISPOSITION IN THE COURT BELOW

The District Court entered its Order on Defendants' Motion for Summary Judgment on March 31, 2015.   [Doc.141]. The District Court's Order granted summary judgment to Officer LePage, Officer Ings, Officer Reynolds, Officer Lewis, Officer Clements and Sgt. Gamble on Plaintiffs' Fourth Amendment claim for their warrantless entry into Plaintiffs' home, and granted summary judgment to Ings and Clements against Plaintiff's Fourth Amendment excessive force claim based on using their Tasers against Dirk Smith.   However, the District Court denied summary judgment to LePage and Ings on Plaintiffs' Fourth Amendment excessive force claim arising from their fatal shooting of Dirk Smith after he lunged at them (as well as Officer Clements and Sgt. Gamble) while holding a knife.   [Doc.141]-45-46. Specifically, with respect to the Fourth Amendment excessive force claim against LePage and Ings, the District Court held the officers are not entitled to qualified immunity due to the existence of a dispute of material fact as to whether Dirk Smith was armed with a knife when they fatally shot him. [Doc.141]-45-46.   The District Court thus denied qualified immunity to LePage and Ings on Plaintiff's federal constitutional claim.   [Doc.141]-45-46, 55.

With respect to Plaintiffs' state law claim for wrongful death and violating the Georgia Constitution, the District Court first held that LePage and Ings were

- 4 -

engaged in a discretionary, rather than ministerial, act when they fired their guns at Dirk Smith. See [Doc.141]-50-51. Notwithstanding the absence of evidence of malice by LePage and Ings, the District Court denied official immunity to them on Plaintiffs' state law claims finding there is a disputed issue of material fact on whether Dirk Smith was armed and threatened the officers. *See* [Doc.141]-53-55.

## IV.    STATEMENT OF FACTS

On March 7, 2010, DeKalb County Police Officers Charles Ings, Paul Reynolds, Teryl Clements, Phillip Lewis, Richard LePage and Sgt. Vincent Gamble responded to a domestic violence (and possible burglary) call at Plaintiffs' home.  See Defendants' Statement of Undisputed Material Facts ("Defs. SUMF"), [Doc.106-2]-1, 2, 11, 14, 15 & 17.  Plaintiff Estelle Smith and husband Dirk Smith had been vacationing in Las Vegas, Nevada and they left their young children, Plaintiffs Kasib Smith and Kahrisma Smith at home with a babysitter, Mr. Ryan Smith ("Bigham" or "Smiths' babysitter"). Defs. SUMF [Doc.106]-1,2,3. Officers Reynolds and Ings were the first to arrive at Plaintiffs' house. Defs. SUMF [Doc.106]-1-4.  Bigham told the officers that Dirk Smith had arrived back to the house alone and that he had smashed a rear sliding glass door to force entry into the house scaring him (Bigham) out of the home in the process.  Defs. SUMF [Doc.106]-1-4.  Bigham had left the Smiths' children, Kasib and Kahrisma inside the house with their father, Dirk Smith and called 911 for police assistance.  Defs.

SUMF [Doc.106]-1-4.  Reynolds and Ings were given consent by Bigham to enter the Smiths' house in order to investigate Bigham's call by questioning Dirk Smith and to check on the welfare and safety of Plaintiffs Kasib and Kahrisma.  Defs. SUMF [Doc.106]-3, 4 &5.   After Officers Reynolds and Ings had entered the Smiths' home to conduct an investigation, they were confronted by Dirk Smith brandishing a deadly weapon (a butcher knife) and he refused to drop it. Defs. SUMF [Doc.106]-5-6.  The officers used non-lethal force in an attempt to disarm the deadly weapon, but Dirk Smith fled into a nearby upstairs bedroom that had an on suite master bathroom. Defs. SUMF [Doc.106]-8-9. Officers Reynolds and Ings got the Smiths' children and walked them out of the house to the babysitter, Bigham.  Defs. SUMF [Doc.106]-9-10.

Officers Clements, Lewis and LePage arrived after Dirk Smith fled into the bathroom with the butcher knife (a deadly weapon).  Defs. SUMF [Doc.106]-12-15. Dirk Smith repeatedly opened and closed the bathroom door as Officer Clements negotiated with him to try to get him to surrender peacefully.  Id. When Sgt. Gamble arrived on the scene, he was confronted with Dirk Smith's bizarre behavior – agreeing to come out of the bathroom but opening and closing the bathroom door without doing so. Defs. SUMF [Doc.106]-17-19.   The officers continually commanded Dirk Smith to surrender and drop the knife but he refused to obey.  Defs. SUMF [Doc.106]-20-22. When Dirk Smith became silent, attempts

- 6 -

were made to check on his status in the bathroom and affect his arrest for simple assault, at a minimum. Defs. SUMF [Doc.106]-20-22.

Officer LePage kicked open the bathroom door and LePage and the officers inside the master bathroom saw Dirk standing in the bathroom waving a butcher knife. Defs. SUMF [Doc.106]-21. The officers commanded Dirk Smith to surrender and drop the knife but he refused to obey. Defs. SUMF [Doc.106]-19-22. [2] Dirk Smith responded by charging at Defendants LePage and Ings as well as Officer Clements and Sgt. Gamble with his butcher knife raised in a position to attack them. Defs. SUMF [Doc.106]-19-22. Officer Gamble deployed his Taser, but it failed to stop Dirk Smith's attack. So, LePage and Ings fired their guns in self-defense to prevent Dirk Smith from harming the officers with the knife. Defs. SUMF [Doc.106]-19-22. Dirk Smith died from the gunshot wounds.

## V.    STANDARD OF REVIEW

The Eleventh Circuit reviews the denial of summary judgment based on qualified immunity and official immunity *de novo*. Hoyt v. Cooks, 672 F.3d 972, 977, 981 (11th Cir. 2012) (citations omitted). In the immunity context, the Court must view the evidence in the light most favorable to the plaintiff, but it need not accept the district court's findings of fact in their entirety. Cottrell v. Caldwell, 85 F.3d 1480, 1486 & n.3 (11th Cir. 1996). Rather, the Court may consider the

---

[2] Doc.107-16/Clements Aff. ¶¶11-14; Doc. 107-12/Ings Aff. ¶¶ 10, 25, 28-29, 30; Doc.107-11/LePage Aff., ¶¶ 8, 12-14; Doc.107-13/Gamble Aff. ¶¶ 11, 14-17.

46-2211

adequacy of the evidence and make for itself those factual determinations that are "part and parcel" of the core immunity issues.  Id. at 1486.

In deciding whether the district court erred in denying summary judgment, the Court's task is to ascertain whether the record reveals that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is not genuine if it is unsupported by the evidence or created by evidence that is "merely colorable" or is "not significantly probative."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986).  Likewise, where the evidence merely creates "some metaphysical doubt as to the material facts," no genuine issue exists, and the denial of summary judgment should be reversed.  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (citation omitted).

- 8 -

## SUMMARY OF THE ARGUMENT

In the case at bar, the undisputed facts show that Officers LePage and Ings' action were objectively reasonable given the totality of circumstances at hand when they encountered Dirk Smith.  Both LePage and Ings were reasonable in using deadly force to stop the threat posed by Dirk Smith who lunged at them with a butcher knife upon exiting the master bathroom.

The District Court nevertheless found that there was a disputed issue of material fact on whether Dirk Smith was armed when LePage and Ings fired their weapons.  The court's ruling is clearly erroneous.  No facts or evidence of record contradict or dispute LePage and Ings' recount of their encounter with Dirk Smith. LePage and Ings as well as Clements and Gamble gave undisputed testimony that they were in the master bedroom and they saw Dirk charged out of the bathroom heading towards them with a knife raised above his head. It is undisputed that Plaintiff Kasib Smith was standing outside of the house along with his sister, Plaintiff Kahrisma Smith and their babysitter Kasib Smith when the Dirk Smith was shot.  That LePage and Ings fired their weapons in self-defense to prevent themselves as well and Clements and LePage from being injured by Dirk was most certainly objectively reasonable under the Graham v. Conner and Tennessee v. Garner standards, cites infra. Both Ings and LePage were objectively reasonable in

46-2211

meeting Dirk Smith's deadly force with deadly force of their own to protect themselves and their fellow officers.

Moreover, neither the Supreme Court nor the Eleventh Circuit nor the Georgia Supreme Court has ever held that an actionable discharge in remotely similar circumstances constitutes a constitutional violation.  The District Court, therefore, also erred in holding that LePage and Ings' alleged violation of Plaintiffs' constitutional right was "clearly established" and thus erred in denying qualified immunity to them. As such, this Court should reverse the district court's decision denying qualified immunity.

With respect to Plaintiffs' state law claims, the District Court properly ruled that defendants/LePage and Ings were engaged in a discretionary act during their encounter with Dirk Smith (Plaintiff Estelle Smith's husband), but erroneously ruled there was a factual dispute as to whether Dirk Smith was armed with deadly weapon when the officers fired their guns.  The court citing to hearsay and drumming ups facts that do not exist are insufficient to avoid summary judgment or meet Plaintiff's burden of showing the actual malice required to overcome defendants' entitlement to official immunity.   Therefore, the Court erred in denying official immunity to LePage and Ings on Plaintiffs' state law claims.

- 10 -

## ARGUMENT AND CITATION OF AUTHORITIES

## I. THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO LEPAGE AND INGS ON PLAINTIFFS' FOURTH AMENDMENT EXCESSIVE FORCE CLAIM

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). The purpose of the doctrine "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003) (citation omitted). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson, 555 U.S. at 231, 129 S. Ct. at 815 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)).

To establish the defense of qualified immunity, a government official must establish that "he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997). In the instant action, there is no dispute that Officers LePage and Ings were acting within the scope of their discretionary authority when they fatally

- 11 -

shot Dirk Smith in self-defense.  *See* [Doc.141]  Accordingly, the Court's qualified immunity analysis will involve two steps.  See, e.g., <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007); see <u>Pearson</u>, <u>cite</u> <u>supra</u>, 555 U.S. at 225, 129 S. Ct. at 815 (held two-step process from <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151 (2001), is relaxed; thus courts have flexibility to first consider if the constitutional right was clearly established).  First, the Court must decide whether the plaintiff has shown a violation of his constitutional rights.  <u>Id</u>.  Second, "[i]f and only if" the plaintiff has satisfied this first step, the Court must decide whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. <u>Id</u><b>.</b>  Because Plaintiffs cannot satisfy either of those steps, the District Court erred in denying qualified immunity to LePage and Ings on Plaintiff's Fourth Amendment excessive force claim.

The alleged constitutional violation on which Plaintiffs premise their claim under 42 U.S.C. § 1983 is a violation of Dirk Smith's Fourth Amendment rights. See [1]-8 ¶¶ 16-17.  Plaintiffs specifically allege that LePage and Ings used excessive force under the Fourth Amendment then they fatally shot Dirk Smith, Plaintiff Estelle Smith's husband and Plaintiffs Kasib and Kahrisma Smith's father.

In <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989), the United States Supreme Court held that claims asserting law enforcement officers used excessive force– deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a

free citizen should be analyzed under the Fourth Amendment's "reasonableness" standard.[3]  In <u>Crosby v. Monroe County</u>, 394 F.3d 1328 (11th Cir. 2004), the Eleventh Circuit held that **"**the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." <u>Id</u>. at 1333 (citing <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1248 (11th Cir. 2004)).[4]

Courts must also consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 109 S. Ct. at 1872; see also <u>Lee v. Ferraro</u>, 284 F.3d at 1198. The proper application of the reasonableness test requires a careful consideration of the facts and circumstances of each particular case. <u>Graham</u>, cite supra; see also <u>Scott v. Harris</u>, 550 U.S. 372, 383 (2007) ("in the end we must still slosh our way

---

[3]    The <u>Graham</u> Court further instructed that the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. (citations omitted) The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation. 490 U.S. at 396-97.

[4] Other secondary factors to consider are: "'(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.'" <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002)).

- 13 -

through the fact bound morass of 'reasonableness'").  In sum, the Court is not to "sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest. The Court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense."  Buckley v. Haddock, 292 Fed. App'x. 791, 793-794 (11th Cir. 2008).

In the case at bar, the undisputed facts show that Officers LePage and Ings' action were objectively reasonable given the totality of circumstances at hand when they encountered Dirk Smith.  Both LePage and Ings were reasonable in using deadly force to stop the threat posed by Dirk Smith who lunged at them with a butcher knife upon exiting the master bathroom.  For the reasons set forth more fully below, there are no facts of record establishing that LePage and Ings violated Dirk's Smith's constitutional rights, they are entitled to qualified immunity against Plaintiffs' federal claims.

**A.    Officers LePage and Ings Are Entitled to Qualified Immunity In Using Deadly Force Because They Had Probable Cause to Believe Dirk Smith Intended To Use Deadly Force Against Them and Their Fellow Officers.**

The United States Supreme Court held in Tennessee v. Garner that "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others . . . [or] if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a

- 14 -

crime involving the infliction or threatened infliction of serious physical harm,

deadly force may be used if necessary to prevent escape, and if, where feasible,

some warning has been given." Id. 105 S.Ct. 1694, 1701 (1985).

The Eleventh Circuit has further interpreted the standard set forth by the

United States Supreme Court in Tennessee v. Garner, supra, as follows:

> First, an officer must have probable cause to believe that
> the suspect poses a threat of serious physical harm to the
> officer or to others.  Probable cause of this sort exists
> where the suspect actually threatens the officer with a
> weapon or where there is probable cause to believe that
> the suspect has committed a crime involving the
> infliction or threatened infliction of serious physical
> harm. Second, deadly force must be necessary to prevent
> escape.  Third, the officer must give some warning
> regarding the possible use of deadly force whenever
> feasible.

Acoff v. Abston, 762 F.2d 1543, 1547 (11th Cir. 1985).  Under Georgia law, "a

person is justified in using force which is intended or likely to cause death or great

bodily harm only if he or she reasonably believes that such force is necessary to

prevent death or great bodily injury to himself or herself or a third person or to

prevent the commission of a forcible felony." Ga. Code Ann. § 16-3-21(a).

In the instant action, the undisputed material facts show Dirk Smith charged

out of the bathroom with a butcher knife raised in a threatening manner towards

LePage and Ings and their fellow officers, Sgt. Gamble and Officer Clements who

were located inside or near the door to the Smiths' master bedroom. Defs.SUMF,

- 15 -

[Doc.106]-19-22.[5]    Dirk Smith's threatening behavior caused reasonable fear in the officers. (Id).  In Sgt. Gamble's haste to get away from Dirk Smith, he ran into the doorframe of the bedroom. Doc.107-13, Gamble Aff. ¶¶15-17.  LePage' s right arm struck the bedroom's doorjamb as he was attempting to get away from Dirk Smith.  Doc.107-11, LePage Aff. ¶¶ 13-14.  Ings fired his handgun believing Dirk Smith was going to stab Sgt. Gamble and/or the other officers upon observing his (Dirk's) hostile behavior.  Doc.107-12, Ings Aff. ¶¶ 29-30.  LePage also fired his gun in self-defense because Dirk's action in charging at them with a knife threatened his life and Sgt. Gamble's life.  Doc.107-11, LePage Aff. ¶¶ 13-15.

The undisputed facts show that between the time when Dirk Smith fled into the master bathroom and the time the bathroom door was breached (kicked open by LePage), none of the defendants officers, including LePage and Ings, used force against Dirk in order to take him into custody.  None of them applied physical force by using their hands to restrain him.  However, after the master bathroom door was kicked open, Dirk Smith attempted to use deadly force—by threatening them with a knife—and consequently he was fatally shot.

Dirk Smith swinging the butcher knife in a stabbing and slashing manner towards the officers when he suddenly exited the master bathroom gave both LePage and Ings probable cause to believe that Smith was threatening to inflict

---

[5] Doc.107-16/Clements Aff. ¶¶11-14; Doc. 107-12/Ings Aff. ¶¶ 10, 25, 28-29, 30; Doc.107-11/LePage Aff., ¶¶ 8, 12-14; Doc.107-13/Gamble Aff. ¶¶ 11, 14-17

imminent, physical harm on them and their fellow officers.  Both Ings and LePage were objectively reasonable in meeting Dirk Smith's deadly force with deadly force of their own to protect themselves and their fellow officers.  As such, the Court should find that qualified immunity bars Plaintiffs' excessive force claim against Ings and LePage.

Here, the District Court incorrectly held that "the totality of the evidence, viewed in Plaintiffs' favor, demonstrates a material dispute of fact over whether Dirk Smith was armed with a knife once he retreated upstairs, locked himself in the bathroom, and refused to come out until the officers broke through the door**.** [Doc.141]-45.  In reaching this decision, the court states the circumstances here are more akin to those presented in cases dealing with the use of deadly force by police officers against mentally and emotionally disturbed persons inside their homes. The court goes on to cite, for example, the Eleventh Circuit Court's decisions in <u>Mercado v. City of Orlando</u>, 407 F.3d 1152 (11th Cir.2005); <u>Wood v. City of Lakeland</u>, 203 F.3d 1288 (11th Cir.2000), and <u>Menuel v. City of Atlanta</u>, [25 F.3d 990 (11<sup>th</sup>Cir.1994).  [Doc.141]-41.  Notably, the Eleventh Circuit Court's decisions in <u>Mercado</u>, <u>Wood</u> and <u>Menuel</u> support LePage and Ings' position that the District Court erred in finding they were not entitled to qualified immunity against Plaintiffs' excessive force claim.

- 17 -

46-2211

More specifically, in Menuel v. City of Atlanta, cite supra, the plaintiff asserted claims of unlawful seizure and excessive force against the City of Atlanta and several police officers after his relative was killed in a shootout with the police.  In Menuel, the decedent retreated into and locked herself inside an interior bedroom after lunging at two police officers while holding a butcher knife.  The officers followed the decedent into the hallway outside the bedroom where she was barricaded "and tried futilely to induce [her] surrender." Id. at 992.  Shortly thereafter, a supervisor and two other officers arrived at the home and intervened in the situation.  The officers declined the family's request for them to leave because it was a crime for decedent (their relative) to threaten them with a knife. Id. Eventually, the officers devised a strategy to effect the decedent's arrest by using one officer to distract the decedent by knocking on the bedroom window and the other officers would force their way through the bedroom door.  Id. at 993. However, to all of the officers' surprise, when they ultimately forced their way through the bedroom door, the decedent fired a handgun at the four incoming officers.  The officers' returned fire killing the decedent.  Id. This Court found the officers acted reasonably in forcefully entering the bedroom because they believed she (decedent) was either unarmed or carried only a knife. Id. at 996.  This Court held that, although the officers seized the decedent by shooting her, "in the

- 18 -

circumstances of this case, [they] violated none of her Fourth Amendment rights as a result." **Id.**

In City and County of San Francisco, California v. Sheehan, a very recent decision that is directly on point and has similar facts, the U.S. Supreme Court held the defendants/officers were entitled to qualified immunity against plaintiff's Fourth Amendment claim where they fired multiple gun shots at the plaintiff (mentally ill woman) who threatened them with a knife when they attempted to take her into custody to transport her to a mental health facility.  Id. 135 S.Ct. 1765, 1768, 575 U.S.___ (2015).  In Sheehan, the plaintiff (suffering from a schizoaffective disorder) lived in a group home for mentally ill people. Two city police officers were dispatched to assist with transporting her to a psychiatric hospital to be evaluated.  Id. at 1770.  When the officers entered plaintiff's room, she reacted violently by grabbing a long knife and yelling she would kill them, and the officer retreated and called for backup. Id. at 1770.   They determined immediate action was necessary because plaintiff was acting violently, thus they re-entered plaintiff's room and she was armed with a knife and failed to drop it after they used pepper spray, so both officers responded by firing their weapons. Id. at 1771.  The Sheehan court instructed that under the Fourth Amendment "it is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of other." Sheehan, 135 S.Ct. at 1775 (citing Warden, Md. Penitentiary

v. Hayden, 387 U.S. 294, 298-299, 87 S.Ct. 1642 (1967)).  The court held the officers acted reasonably when they opened plaintiff's bedroom door for the second time and then fired their guns (potentially deadly force) to protect themselves from plaintiff who charged at them with a knife, finding qualified immunity barred the plaintiff's constitutional claim.  Sheehan, 135 S.Ct. at 1775 (citing Scott v. Harris, 550 U.S. 372, 384, 127 S.Ct. 1769 (2007)).

In the case at bar, the District Court correctly found the undisputed facts show that, when Ings and Reynolds entered the Smiths' house, they saw Dirk standing on the stairway holding a butcher knife.  [Doc.141]-29.  The Court further found that Ings and LePage as well as Officer Clements and Sgt. Gamble all testified Dirk Smith had a knife with him in the master bathroom. [Doc.141]-33. The court also found that Plaintiffs' version of the facts was that Dirk dropped the knife after Ings tased him on the stairs.  [Doc.141]-32.  The Court then incorrectly held that "the totality of the evidence, viewed in Plaintiffs' favor, demonstrates a material dispute of fact over whether Dirk Smith was armed with a knife once he retreated upstairs [into the master bathroom]" based on the "eye witness" testimony of Dirk Smith's son, Plaintiff Kasib Smith.  [Doc.141]-45.  Based on the above findings, the Court held it "cannot rule as a matter of law that Officers Ings' and LePage's actions were objectively unreasonable when they shot and killed Dirk Smith."  [Doc.141]-45.

- 20 -

The Court, in reaching its decision, stated that it was outright and completely discounting the testimony of the defendants/officers, including Ings and LePage's undisputed testimony regarding the subject encounter with Dirk Smith.[6]   The record however shows that ***only*** defendants/officers Ings, LePage, Gamble and Clements were located in the master bedroom when Dirk Smith charged out of the master bathroom and threatened them with a butcher knife. Defs. SUMF [Doc.106]-19-22.  Specifically, Ings testified (at his deposition) that Dirk Smith was armed with a knife while positioned inside the bathroom and that he refused to drop it.[7]  Ings saw Dirk charge out of bathroom with knife raised at head level, then run towards Gamble and LePage swinging the knife.  Id.  Ings fired his gun at Dirk believing Gamble's life was in danger. Id.  LePage testified at his deposition, regarding Dirk Smith's actions while positioned inside the bathroom, and stated that "[w]hen I opened the door, he (Dirk) stuck the butcher knife out and jabbed

---

[6]  The District Court's order specifically states "[u]nfortunately, the parties' statements of material fact *are not helpful* to the Court's resolution of this most serious and tragic of cases involving complicated questions of constitutional law and the murky territory of qualified immunity.  The Court has therefore reviewed and relied on the evidence submitted by the parties to determine what material facts exist and are in dispute. Plaintiffs are guilty of mischaracterizing evidence and stating their argumentative and legalistic view of the case as 'facts.' At the same time, Defendants assert bogus objections to Plaintiffs' use of the written statements of the officers as unauthenticated on the basis of admissibility." (emphasis added)  Court's Order, Doc.141, p. 45, nt.6.

[7] Defs. SUMF, [Doc. 106-2]-25; Doc.123, Ings. Dep. pp. 64 & 66; Ings. Aff.¶ 28, 29

outside the door and then pulled his knife back in." LePage saw Dirk Smith waving a knife around when Dirk was still locked inside the bathroom and opening the door from time to time. Doc.106-2, Defs. SUMF, pp.19-22.[8] LePage testified that, after he kicked open the master bathroom door, he saw Dirk had a butcher knife in his hand. Id. LePage testified that after he kicked the bathroom door open again, Dirk Smith ran from the bathroom, slashing the knife in an aggressive manner heading toward him and Gamble, that Clements' tasing had no effect, and that he fired his gun two times striking Dirk. Doc.106-2, Defs. SUMF, pp.19-22.[9]

Gamble and Clements testified, consistently with Ings and LePage that they saw Dirk Smith waving a knife around while he was positioned inside the master bathroom. Doc.106-2, Defs. SUMF, pp. 19-22. After that, LePage kicked open the door, Dirk Smith charged out of the bathroom waving the knife in his raised hand and charging towards Gamble and LePage who were located in the master bedroom. Doc.106-2, Defs. SUMF, pp. 19-22. Clements deployed his Taser at Dirk Smith, but it had no effect, and Dirk kept moving forward heading towards Gamble and LePage. Doc.106-2, Defs. SUMF, pp. 19-22.

Nonetheless, contrary to the Fed.R.Civ.P. 56 standard for summary judgment, the Court completely disregarded the undisputed testimony of LePage and Ings as well as Gamble and Clements' and found a disputed issue of material

---

[8] Doc. 122, LePage Dep. p.25
[9] Doc.107-11, LePage Aff. ¶ 15

facts exists based on Plaintiff Kasib Smith's purported eye witness account of the officers' encounter with Dirk Smith.  However, Officer Reynolds and Ings testified they escorted both Plaintiffs Kasib and Kahrisma Smith outside after Ings' ineffective tasing of Dirk Smith to which Dirk responded by fleeing into the master bedroom.  Doc. 106-2, Defs. SUMF, pp. 7-10.

Plaintiff Kasib Smith testified that he saw Dirk get tased by one of the police officers on the stairs, that Dirk dropped the knife, got up and "he went towards the bathroom" but he did not see exactly which way he (Dirk) went, and then officers took him and his sister, Plaintiff Kahrisma out of the house through the back door and took them to the babysitter Ryan Bigham.  Doc. 108-1, Kasib Smith Dep. pp. 66-70. Kasib testified that after they got outside, he heard gunshots coming from inside the Smiths' house, and that a police officer had him to sit inside a patrol car. Doc. 108-1, Kasib Smith Dep. pp. 71-72. There is no evidence in the record showing that Plaintiff Kasib actually witnessed Ings and LePage and other officers' encounter with Dirk Smith when he charged out of the master bathroom inside the house.  Thus, district court in essence has created a dispute of fact that does not actually exist.   The court made a "subjective" decision that these officers intentionally failed to tell the truth (or lied under oath) when they testified at deposition and by affidavit even though these officers were undisputedly the only

- 23 -

ones present with Dirk Smith and observed his non-compliant, threatening behavior when the shooting occurred.

**B.      Even if Plaintiffs Could Show a Constitutional Violation (Which they Cannot), LePage and Ings are Still Entitled to Qualified Immunity, Because The Alleged Constitutional Right Was Not Clearly Established When the Subject Incident Occurred**

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). Whether legal norms were clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and the Supreme Court of Georgia. D'Aguanno v. Gallagher, 50 F.3d 877, 881 n.6 (11th Cir. 1995); McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007)).

"The inquiry into whether a right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Hoyt v. Cooks, 672 F.3d at 977 (quoting Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011)). "The right must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always

- 24 -

protects the defendant.'" Id. (citation omitted). "However, "an official's conduct could run so afoul of constitutional protections that fair warning was present even when particularized caselaw was absent." Willingham v. Loughnan, 321 F.3d 1299, 1303 (11th Cir. 2003). Defendants LePage and Ings are entitled to qualified immunity because there was no clearly established law that put them on notice that their actions were unconstitutional.

Here, as stated above, Ryan Bigham (Smiths' babysitter), consented to Officers Reynolds and Ings entering into the Smiths' home to investigate by questioning Dirk Smith and to find out if their children, Plaintiffs Kasib and Kahrisma were safe inside the house. Once inside, Dirk Smith confronted Reynolds and Ings with a butcher knife and, despite numerous commands for him to drop the knife, Dirk brandished the knife threateningly instead. When Officer Ings attempted to disarm Dirk Smith using his Taser (non-lethal force), Dirk Smith ran into the master bedroom's interior bathroom. Once Officers Clements, LePage, and Lewis arrived at the scene, Dirk Smith was continually opening the master bathroom door, showing the knife and then closing the door back. After Sgt. Gamble arrived and the master bathroom door was kicked open revealing Dirk holding a knife, the officers used force to prevent Dirk Smith from stabbing them. Defendants have searched case law in this circuit and have found no cases where similar activities in totality were found to be a violation of a person's constitutional

- 25 -

rights.  As such, all Defendants are entitled to qualified immunity on Plaintiffs' federal claims against them.

## II.  THE DISTRICT COURT ERRED IN DENYING OFFICIAL IMMUNITY TO DEFENDANTS LEPAGE AND INGS ON PLAINTIFFS' STATE LAW CLAIMS

Official immunity is intended to keep public employees from quitting for fear of liability, and to promote the vigorous discharge of their duties.  *See* Cameron v. Lang, 274 Ga. 122, 123 (1) (2001).  The concept of official immunity, developed primarily through case law, was made part of the Georgia Constitution with the passage of the 1991 amendment. Ga. Const., Art. I, § 2, ¶ 9(d).  The Georgia Supreme Court has interpreted the term "official function" as used in the Constitution, to mean "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."    Gilbert v. Richardson, 264 Ga. 744, 753 (1994). The determination of whether an act is discretionary or ministerial "'turns on the character of the specific act, not the general nature of the official's position. [cits.]'"  Schmidt v. Adams, 211 Ga. App. 156, 157 (1993) (citations omitted).  "Liability may be imposed as a result of the exercise of such a discretionary function only when the acts complained of are done within the scope of the officer's authority and with willfulness, malice or corruption." Carter v. Glenn, 249 Ga. App. 414, 416 (2001) citing McDay v. City of Atlanta, 204 Ga. App. 621, 622 (1992).  Malice for official immunity purposes

- 26 -

is defined as "express malice or malice in fact." <u>Merrow v. Hawkins</u>, 266 Ga. 390, 392 (1996).  It encompasses an actual intent to cause harm to the plaintiff with a wicked or evil motive.  <u>Valades v. Uslu</u>, 301 Ga. App. 885, 891 (2009); <u>Adams v. Hazelwood</u>, 271 Ga. 414, 415 (1999).

"[I]n the context of official immunity, 'actual malice' requires a deliberate intention to do wrong, and denotes 'express malice or malice in fact.'" <u>Adams v. Hazelwood</u>, 271 Ga. 414, 414-15, 520 S.E.2d 896, 898 (1999) (citation omitted). Thus, "implied malice," "harboring bad feelings about another," or even "deliberate acts of wrongdoing done with reckless disregard for the safety of others" are all insufficient. *See id.* at 415, 520 S.E.2d at 898; <u>Merrow v. Hawkins</u>, 266 Ga. 390, 392, 467 S.E.2d 336, 338 (1996); <u>Murphy v. Bajjani</u>, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007).  Instead, "the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs." <u>Selvy v. Morrison</u>, 292 Ga. App. 702, 704, 665 S.E.2d 401, 405 (2008) (citing <u>Murphy</u>, 282 Ga. at 203, 647 S.E.2d at 60).  This is consistent with the requirement for "intent to injure," which is the "actual intent" to injure the plaintiff.  <u>Id</u>.

In the case at bar, there is absolutely no material evidence of actual malice on the part of Officers LePage and Ings. In fact, the District Court did not identify any material evidence of actual malice on the part of LePage and Ings in denying them official immunity against Plaintiffs' state law claims for wrongful death and

- 27 -

violating the Georgia Constitution.  [Doc.141]-53-55.  Instead, the District Court denied official immunity to LePage and Ings finding that "[i]n light of the factual disputes over whether Dirk Smith was armed at the time and was threatening the officers, a reasonable jury could conclude that Officers Ings and LePage acted with malice in shooting Dirk Smith as he attempted to escape the officers' use of force in his home." See id.  This reasoning is flawed.  Ultimately, there is no evidence of record but only the District Court's speculation that Officers LePage and Ings acted with actual malice when they fired their guns to defend themselves and the other officers from Dirk Smith threatening their safety with the knife.

The undisputed facts show that Dirk Smith never complied with the officers' numerous and persistent demands for him to put down the butcher knife and surrender.  Dirk Smith posed a continuing threat to the officers' safety by remaining armed with the knife. The record facts show that Dirk Smith unexpectedly ran out of the bathroom while still holding the knife in a threatening way and lunged at the officers heading first towards Officers Clements and then directly for Sgt. Gamble.  Officer Clements deployed his Taser to stop Dirk Smith's threat but he (Dirk) kept on moving forward. Doc. 107-13; Clements Aff. ¶¶ 12-13).  Officers Ings and LePage fired their guns to stop Dirk as he moved toward Gamble still holding the knife in a threatening manner. Doc. 107-12, Ings Aff. ¶¶ 29-30; Doc. 107-11, LePage Aff. ¶¶ 13-15.

- 28 -

All the officers gave consistent testimony that Dirk Smith exited the master bathroom threatening their safety with a knife and they fired their guns in self-defense.    The undisputed record facts show that only the defendants/officer, including LePage and Ings were present when Dirk Smith exited the master bathroom swinging the butcher knife.    As a matter of law, Plaintiffs cannot demonstrate that LePage and Ings, acted with malice in defending themselves against Dirk Smith's threat.    As such, this Court should reverse the district court's denial of official immunity to LePage and Ings.

## **CONCLUSION**

For the foregoing reasons and the reasons to be stated at any oral argument in this matter, the District Court's Order should be reversed.

Respectfully submitted, this <u>27th</u> day of July 2015.

DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone:  (404) 371-3011
Facsimile:  (404) 371-3024

LAURA K. JOHNSON
Deputy County Attorney
Georgia Bar No. 392090

*/s/ Brenda A. Raspberry*
BRENDA A. RASPBERRY
Senior Assistant County Attorney
Georgia Bar No. 595130

Counsel for Defendants/Appellants
Richard LePage, Jr. and Charles Ings

- 29 -

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Fed. R. App. P. 32(a)(7), I hereby certify that, excluding the materials authorized to be excluded from the word count by 11th Cir. R. 32-4, this brief contains 6,934 words.  I have relied on a word-processing system for the word count.

I further certify that this brief has been prepared in a proportionally spaced typeface utilizing 14-point Times New Roman font.

This <u>27</u><sup>th</sup> day of July 2015.

*/s/ Brenda A. Raspberry*

Brenda A. Raspberry
Senior Assistant County Attorney
DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone:  (404) 371-3011
Facsimile:  (404) 371-3024

Attorney for Defendants/Appellants
Richard LePage, Jr. and Charles Ings

46-2211

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to Fed. R. App. P. 25(a)(2)(B), I filed "**BRIEF OF APPELLANTS RICHARD LEPAGE, JR. AND CHARLES INGS**" by mailing to the Clerk of Court by United States mail, first-class postage prepaid, addressed as follows:

> Douglas J. Mincher – Appeal No. 14-14599-BB
> U.S. Court of Appeals – Eleventh Circuit
> 56 Forsyth Street, NW
> Atlanta, Georgia 30303

I further certify that, pursuant to 11th Circuit Rule 25-3, I electronically filed a true and correct copy of " **BRIEF OF APPELLANTS RICHARD LEPAGE, JR. AND CHARLES INGS** " with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to counsel of record as follows:

> Lynn Whatley, Esq.
> Whatley & Associates.
> 1580 Connally Drive
> East Point, GA 30344
> lynn@mindsrping.com

> Mary Katherin Durant, Esq.
> Law Offices
> 4426 Hugh Howell Road, Suite B-336
> Tucker, GA 30084
> katherine@durantlawllc.com

46-2211

This $\underline{27^{th}}$ day of July 2015.

/s/ Brenda A. Raspberry
Brenda A. Raspberry
Senior Assistant County Attorney
DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone:  (404) 371-3011
Facsimile:  (404) 371-3024

Attorney for Defendants/Appellants
Richard LePage and Charles Ings

46-2211